1

2

3                       **UNITED STATES DISTRICT COURT**

4                       **NORTHERN DISTRICT OF CALIFORNIA**

5

6

7   **RICHARD COLLINS AND RUBY COLLINS,**          **Case No.: 4:12-CV-2984 YGR**

8           **Plaintiffs,**                        **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**

9           **vs.**

10  **TEAMSTERS BENEFIT TRUST, LIPMAN INSURANCE ADMINISTRATORS, INC., AND INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 853,**

11

12

13          **Defendants.**

14          Plaintiffs Richard and Ruby Collins ("Plaintiffs") challenge the change to their retiree health

15  plan that requires them to contribute to the costs of healthcare benefits.  Plaintiffs' First Amended

16  Complaint (Dkt. No. 6 ("FAC")) brings four claims:  (1) violation of the terms of the plan and the

17  Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"); (2) breach

18  of fiduciary duty, also under ERISA; (3) a state law claim for breach of the implied covenant of good

19  faith and fair dealing; and (4) breach of the duty of fair representation.

20          Defendants filed a Motion to Dismiss (Dkt. No. 9) on the grounds that:  (1) Plaintiffs fail to

21  allege cognizable claims under ERISA; (2) ERISA preempts their third claim which is brought under

22  state common law claim; and (3) the Fourth Claim is both time-barred and fails to state a claim.

23  Having reviewed the papers submitted, the FAC, for the reasons set forth below, the Court **GRANTS**

24  the Motion to Dismiss **WITH LEAVE TO AMEND**.[1]

25

26

27

28  _____

[1] Plaintiffs did not appear at oral argument and both parties agreed to submit the matter on the papers.

*United States District Court*
*Northern District of California*

# I.      BACKGROUND

This dispute concerns the propriety of amendments to an ERISA health and welfare plan. During his working years, Plaintiff Richard Collins prepaid into a fund for his postretirement health insurance coverage for himself and his wife.  When Mr. Collins retired, Plaintiffs did not need to contribute towards their healthcare costs.  Subsequently, the terms of the health and welfare plan changed to their detriment, and they now need to contribute towards the cost of their healthcare. Plaintiffs brought this action to enforce the terms of the health and welfare plan in effect at the time of Mr. Collins' retirement.

## A.      ABOUT THE PARTIES

Plaintiff Richard Collins is a retired member of Defendant International Brotherhood of Teamsters, Local 853 ("Local 853"), a labor organization, and a participant in the Retirement Security Plan ("RSP" or "Plan"), a post-retirement health and welfare plan.  (FAC ¶¶ 4, 7-8.)  His wife, Plaintiff Ruby Collins, as an eligible spouse, is a beneficiary in the RSP.  (*Id.* ¶ 4.)  Defendant Teamsters Benefit Trust ("TBT") is the sponsor of the Plan and acts under the direct management of a joint Board of Trustees comprised of union and employer members.  (*Id.* ¶ 5.)  Defendant Lipman Insurance Administrators, Inc. ("Lipman") is a third party administrator that carries out the "administrative functions associated with operating the RSP—billing participants for monthly premiums and processing participants' and providers' claims—but under the direct supervision of TBT's Board of Trustees."  (*Id.* ¶ 6.)

## B.      THE HEALTH PLAN

The Plan is a multi-employer health and welfare plan available to qualifying retirees and their spouses.  As an employee benefit plan, the Plan is governed by ERISA.  The Plan allows for pre-payment of post-retirement health insurance premiums with an employee's wages in the years prior to retirement.  (*Id.* ¶ 12.)  The Summary Plan Description ("SPD") explains that "[t]he RSP is intended to be funded by contributions before retirement.  *Participation* and *Plan experience* will determine whether this pre-retirement funding is adequate—and post-retirement, you may be required to make supplemental self-payments for Plan coverage."  (*Id.* ¶ 9 (emphasis in original).)

The pre-retirement contribution dollar amount is set and adjusted by the TBT Board of Trustees and is based on actuarial factors such as Plan-wide "participation" levels (*i.e.*, number of employees participating in the plan) and "experience" ratings (*i.e.*, medical costs). (*Id.* ¶ 9.) According to the SPD, "[t]he current monthly contribution is subject to change based on the number of employees in the RSP and the Plan's experience." (*Id.*) TBT may "change or discontinue any Plan at any time for any reason … [and such] amendments may change benefit levels, eligibility requirements or any other provision of the Plan." (*Id.* ¶ 22.)

**C.    THE AMENDMENT TO THE HEALTH PLAN AND THE PRESENT DISPUTE**

Under this Plan, on September 30, 2003, Plaintiff Richard Collins fulfilled the requirements for full participation in the RSP after his retirement and, after retiring in April, 2008, began receiving RSP benefits for himself and his wife with no monthly charges. (*Id.* ¶¶ 11, 13-14.)

On April 2, 2010, the TBT Board of Trustees amended the Plan and adopted a two-tiered Plan ("Revised Plan") that became effective July 1, 2010. (*Id.* ¶¶ 14-15.) Under the Revised Plan, a participant is assigned through his or her bargaining unit to either the "Gold" or "Silver" option. (*Id.*) The "Gold" option preserved "the full extent of the RSP Plan without diminution of benefits or terms" and maintained the monthly pre-retirement contribution increases to Plan participants. (*Id.* ¶ 14) The "Silver" option" provided for a lower monthly pre-retirement contribution rate but (1) required that participants increase the minimum number of contributions to qualify for post-retirement RSP benefits, and (2) required retired participants, including those already receiving RSP benefits, to "pay 20% of TBT's costs for post-retirement health coverage, as a per-retiree monthly charge, <u>regardless</u> of the <u>Plan-wide</u> 'participation' or 'experience' factors." Plan. (*Id.* (emphasis in original).) Thus, as of July 1, 2010, the effective date of the Revised Plan, "TBT formally abandoned the <u>Plan-wide</u> 'participation' factor that was to affect, along with the <u>Plan-wide</u> 'experience' factor, any necessity for post-retirement monthly contributions. (FAC ¶ 15.)

On May 1, 2011, without including retirees in the discussions, deliberations, or voting, then Local 853 voted to accept the "Silver" option and imposed its terms on Plaintiffs and other members of that bargaining unit. (*Id.* ¶ 15-16.) As such, under the Revised Plan, Plaintiffs now must pay a monthly charge—currently $363.20—for continued eligibility to participate. (*Id.* ¶ 15.) This

United States District Court
Northern District of California

1  amounts to over 21% of Mr. Collins' pension, which Plaintiffs allege is a total failure on the part of

2  Defendants to satisfy the intent of the Plan: "to secure a retiree's retirement income from being

3  consumed by the ravages of post-retirement health care coverage costs."  (*Id.* ¶ 17.)

4        After TBT adopted the Revised Plan, Plaintiff Richard Collins objected to the application of

5  the Revised Plan as to retirees.  (*Id.* ¶ 18.)  Specifically, Plaintiffs allege in the FAC that they were

6  "wrongly" enrolled in the "Silver" option and should have been included in the bargaining process or

7  have been exempted from paying the new monthly charges.  (*Id.* ¶ 16.)  Having exhausted "all

8  reasonable, non-futile administrative remedies" required by the Plan, Plaintiffs brought this action.

9  **II.    LEGAL STANDARD**

10        A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the

11  complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Dismissal under Rule

12  12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts

13  alleged under a cognizable legal theory.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To

14  withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true,

15  to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

16  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).[2]

17  **III.   DISCUSSION**

18        ERISA provides a comprehensive scheme that regulates the design and administration of

19  employee benefit plans—both pension and welfare benefit plans.  *Aetna Health Inc. v. Davila*, 542

20  U.S. 200, 208 (2004) ("The purpose of ERISA is to provide a uniform regulatory regime over

21  employee benefit plans.").  "Among the principal purposes of this 'comprehensive and reticulated

22  statute' was to ensure that employees and their beneficiaries would not be deprived of anticipated

23  retirement benefits …."  *Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984)

24  (citing *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 361-362 (1980)).  Title I of

25

26  _____

27  [2] *Pro se* complaints are held to less stringent standards than complaints drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In their Reply, Defendants state "Plaintiff Richard Collins was admitted to the bar of California in 1981 and disbarred in 1991."  (Reply at 8.)  They argue that the FAC is not entitled to the same "indulgence" generally accorded to the pleadings of *pro se* litigants because Mr. Collins, although disbarred, was trained as an attorney.  (*Id.* at 8-9.)

28

4

United States District Court
Northern District of California

ERISA contains provisions concerning reporting and disclosure requirements, participation and vesting rules, funding, fiduciary obligations, plan administration, enforcement, and continuation coverage under group health plans. *See generally*, 29 U.S.C. §§ 1021-1169.

Section 502 authorizes ERISA participants and beneficiaries to bring civil actions to enforce ERISA rights. 29 U.S.C. § 1132. Plaintiffs bring claims under two of the civil enforcement provisions of Section 502, subparts (a)(1)(B) and (a)(3). ERISA § 502(a)(1)(B) allows a plan participant to "recover benefits due to him under the terms of his plan,[3] to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id*. § 1132(a)(1)(B).

Under ERISA § 502(a)(3), a suit may be brought by a plan participant or beneficiary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). This Section has been characterized as a "catch all" provision, and normally is invoked by a plaintiff where relief is not provided elsewhere in the statute. *See Varity Corp. v. Howe*, 516 U.S. 489, 512-15 (1996). The provision authorizes solely equitable relief, and if an adequate remedy is provided elsewhere, then a claim under § 502(a)(3) is not appropriate. *See id*. at 515 ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'").

## A.   FIRST CLAIM — VIOLATIONS OF THE TERMS OF THE PLAN AND ERISA

Plaintiffs' First Claim, brought under 29 U.S.C. §§ 1022 and 1132(a), alleges two ERISA violations against TBT and Lipman: (1) imposing a monthly charge violated the terms of the Plan; and (2) the Summary Plan Description is misleading.

### 1.   Action to enforce terms of Plan.

Plaintiffs allege that TBT and Lipman breached the terms of the Plan in violation of ERISA when they adopted a Revised Plan that required retirees to contribute toward the costs of their

---

[3] This is not a lawsuit to recover benefits due under the Plan pursuant to ERISA § 502(a)(1), since according to Plaintiffs' allegations no benefits for covered services have been denied.

United States District Court
Northern District of California

1    healthcare benefits based on a choice made by each bargaining unit's non-retired active members,

2    and not *plan-wide* "participation" or "experience" factors.  (FAC ¶ 21.)  Defendants argue that

3    Plaintiffs fail to allege a breach of the terms of the Plan because:  (1) the Plan expressly advised that

4    Plaintiffs may need to make post-retirement contributions for Plan coverage; and (2) TBT reserved

5    the right to modify the Plan and having done so, Plaintiffs are not entitled to any relief.

6          In essence, Plaintiffs bring this claim to enforce the terms of the old Plan, not the Revised

7    Plan.  In their Opposition, Plaintiffs characterize the Plan as a "hybrid" pension and welfare plan,

8    intended to provide post-retirement health benefits but funded in a way to "secure" or vest retirees'

9    post-retirement health benefits without post-retirement payments.  (Opp. at 3.)  This "hybrid" Plan

10   argument is not consistent with ERISA or the allegations in the FAC.

11         Under ERISA, welfare plans are not subject to the vesting requirements to which pension

12   plans are subject.  *See* 29 U.S.C. § 1051(1).  ERISA § 3(1) defines a "welfare plan" as any plan

13   "established … for the purpose of providing for its participants or their beneficiaries, through the

14   purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits in the event of

15   sickness."  29 U.S.C. § 1002(1).  By contrast, pension plans, which do vest, "provid[e] retirement

16   income" or "resul[t] in a deferral of income [until retirement]," are "nonforfeitable," and are subject

17   to minimum vesting requirements under § 203(a).  29 U.S.C. §§ 1002(2)(A)(i)-(ii) and 1053(a).

18   Plaintiffs do not allege in the FAC that the Plan has features common to both welfare and pension

19   plans, but rather allege that it is "a post-retirement health and welfare plan."  (FAC ¶ 8.)

20   Accordingly, as alleged in the FAC, the Plan is an ERISA welfare plan that is not subject to

21   minimum vesting requirements.

22         If an ERISA welfare benefits plan is to vest at all, it is only if the plan expressly and

23   unambiguously so specifies.  *See Shore v. Int'l Painters & Allied Trades Indus. Pension Plan*, 418

24   Fed. App'x 597, 602 (9th Cir.) *cert. denied*, 132 S. Ct. 247 (2011).  Plaintiffs do not allege in the

25   FAC that their welfare benefits vested, but rather, they allege that Defendants reserved the right to

26   change the Plan at any time, including by requiring retirees contribute towards the cost of their post-

27   retirement healthcare.  Accordingly, as alleged in the FAC, Plaintiffs' healthcare benefits did not vest

28

United States District Court
Northern District of California

1  upon retirement.  *See, e.g.*, *Williams v. Caterpillar, Inc.*, 944 F.2d 658, 666-67 (9th Cir. 1991)

2  ("Retiree medical benefits do not become vested once an employee becomes eligible or retires").

3       The claim for breach of the terms of the Plan is based on a theory that their retiree health

4  benefits were vested rights, which could not be modified and must be restored.  As pled, neither

5  ERISA nor the Plan provides Plaintiffs with this vested right.  Because Plaintiffs seek to enforce

6  rights under a modified Plan that no longer provides such rights, this claim fails.

7       Accordingly, Plaintiffs' claim that Defendants failed to comply with the terms of the Plan

8  fails to state a claim upon which relief may be granted.

9              *2.    "Confusing" Summary Plan Description*

10      In the alternative, Plaintiffs allege that, if the Defendants did not violate the terms of the Plan,

11  then the Summary Plan Description ("SPD") violates ERISA's disclosure requirements.  Plaintiffs

12  allege they were confused by the "confounding, mixed message assertions in the SPD" regarding the

13  right to change or terminate the Plan "at any time for any reason," while assuring participants that the

14  monthly contribution was subject to change "*based on the number of employees in the RSP and the*

15  *Plan's experience*."  (FAC ¶ 22 (emphasis in original).)[4]

16      ERISA § 102 requires that an SPD "be written in a manner calculated to be understood by the

17  average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise

18  … participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).

19  Section 102(b) lists the specific information that the SPD is required to contain, including the

20  "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."  *Id.* §

21  1022(b).  The Department of Labor regulations interpreting this provision require that the "plan[ ]

22  must include a summary of any plan provisions governing the authority of the plan sponsors or others

23  to terminate the plan or amend or eliminate benefits under the plan."  29 C.F.R. § 2520.102–3.

24      Plaintiffs have alleged insufficient facts to show that Defendants' violated ERISA's

25  disclosure requirements by providing a summary of Plan participants' rights and obligations that also

26  disclosed that TBT may amend those terms.  Here, as alleged in the FAC, the SPD explicitly stated

---

[4] Plaintiffs argue that Defendants should be equitably estopped from challenging this portion of the claim because Plaintiff's administrative appeals were denied based on the terms of the SPD.

that TBT may "change or discontinue any Plan at any time for any reason … [s]uch amendments may change benefit levels, eligibility requirements or any other provision of the Plan."  (FAC ¶ 22.)  This is a sufficient disclosure that the terms of the Plan may change.  *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (holding that because "plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans," a reservation clause in a SPD is a valid amendment procedure).[5]

Plaintiffs have failed to explain how information on Plan funding is so inconsistent with the reservation of the right to modify the Plan that it renders the SPD ambiguous.[6]

### 3.    *Conclusion regarding Plaintiffs' First Claim*

Because Plaintiffs seek to enforce rights under a modified Plan that no longer provides such rights, and do not allege any facts to show that Defendants' violated ERISA's disclosure requirements, this claim fails.

Therefore, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' First Claim **WITH LEAVE TO AMEND**.

### B.    SECOND CLAIM — BREACH OF FIDUCIARY DUTY

ERISA imposes duties on "fiduciaries" and provides remedies for breach of such duties. Section 404 imposes the fiduciary duties of loyalty and prudence, and requires that in making benefits determinations, fiduciaries must follow the terms of the plan documents and instruments

---

[5] Regarding amendments to the Plan, ERISA section 402(b)(3), which requires that a welfare plan set forth a "procedure for amending [the] plan," the Supreme Court has held that "the company reserves the right at any time and from time to time to modify or amend, in whole or in part, any or all of the provisions of the Plan" is sufficient to satisfy ERISA section 402(b)(3).  *Curtiss-Wright*, *supra*, 514 U.S. at 76-77, 81.

[6] Plaintiffs further allege that TBT violated ERISA by failing to disclose explicitly that the "'participation' and 'experience' triggers could be manipulated administratively."  (FAC ¶ 24.)  While ERISA requires the summary of the plan provisions to be comprehensive, it does not require the summary to be exhaustive. *Compare* 29 U.S.C. § 1022(b) (summary disclosures) *with* § 1024(b) (governing plan documents include plan descriptions, annual and terminal reports, and bargaining and trust agreements).  The governing plan documents themselves, not the summary, provide plan participants with the exact terms of the Plan.  *See Curtiss-Wright*, *supra*, 514 U.S. at 83-84 (1995) ("ERISA already *has* an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, a scheme that is built around reliance on the face of written plan documents") (emphasis in original).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    unless inconsistent with ERISA.  29 U.S.C. § 1104(a)(1).[7]  Sections 502(a)(2) and 409 provide a civil

2    right of action to impose liability on plan fiduciaries for breach of such duties.  *See* 29 U.S.C. §§

3    1132(a)(2) & 1109.[8]

4           Plaintiffs allege that Defendants TBT and Lipman breached a fiduciary duty of impartiality by

5    adopting and enforcing the Revised Plan against Plaintiffs.[9]  In particular, the actions that allegedly

6    breached the duty of impartiality are:  (1) adopting and enforcing the two-tiered Plan against those

7    who had retired before July 1, 2010, including Plaintiff Richard Collins; and (2) accepting and

8    enforcing a Local 853 bargaining unit choice to adopt the "Silver" option.  (FAC ¶¶ 28-29.)

9    Defendants move to dismiss on the grounds that (1) the complained of acts are not fiduciary in

10   nature; (2) Lipman is not a fiduciary under ERISA; and (3) the remedy Plaintiffs seek is not available

11   under ERISA.

12          1.      *Whether Lipman is a Fiduciary*

13          Defendants argue that, as a matter of law, Lipman is not a fiduciary.

14          ERISA defines a fiduciary as anyone who exercises discretionary authority or control

15   respecting the management or administration of an employee benefit plan.[10]  *Kyle Railways, Inc. v.*

---

[7] In enacting ERISA, Congress invoked the common law of trusts to broadly define the scope of a fiduciary's responsibilities.  *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 583 (1985) ("The fiduciary responsibility section, in essence, codifies and makes applicable to these fiduciaries certain principles developed in the evolution of the law of trusts") (quoting S. Rep. No. 93-127, p. 29 (1973), *reprinted in* 1974, U.S.C.C.A.N. 4639, 4865).

[8] Section 502(a)(2) provides a civil enforcement action for fiduciary liability under Section 409(a).  Section 409(a) provides for recovery by the plan, as opposed to recovery for the individual participant or beneficiary, who brings suit on behalf of the plan (the participant or beneficiary would benefit indirectly, by enhancing the value of the plan's assets).  Section 409 authorizes recovery from the fiduciary for "any losses" and "any profits," and it further subjects the breaching fiduciary to "such other equitable or remedial relief as the court may deem appropriate."

[9] "The common law of trusts … requires a trustee to take impartial account of the interests of all beneficiaries."  *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996) (citing Restatement (Second) of Trusts §§ 183 and 232).  Here, this duty of impartiality requires that the fiduciary balance the interests of current and future beneficiaries.

[10] The definitions section of ERISA provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).

9

*Pac. Admin. Services, Inc.*, 990 F.2d 513, 516 (9th Cir. 1993).  Performance of "ministerial functions" does not make an entity an ERISA fiduciary.  *Id.* (citing 29 C.F.R. § 2509.75-8(D-2)).

Plaintiffs allege that Lipman "carries out the administrative functions associated with operating the RSP—billing participants for monthly premiums and processing participants' and providers' claims—but under the direct supervision of TBT's Board of Trustees."  (FAC ¶ 6.)  These are purely ministerial functions that Lipman performs.

Accordingly, as alleged in the FAC, Lipman is not an ERISA fiduciary.

2.      *Whether the complained of actions are "fiduciary"*

Defendants argue that the complained of acts are not fiduciary in nature.

When a Plan sponsor also administers an ERISA welfare plan it takes on two roles—settlor[11] and trustee.  "[T]he fiduciary with two hats wear[s] only one at a time, and wear[s] the fiduciary hat [only] when making fiduciary decisions."  *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999).  The threshold inquiry when an ERISA fiduciary is charged with breach of that duty is whether the entity was acting as a fiduciary when taking the complained of action.  *Id.*

A plan sponsor acts as a fiduciary only when fulfilling certain defined functions.  29 U.S.C. § 1002(21)(A).  When plan sponsors modify welfare plans, in general, they act as trust settlors, not fiduciaries.  *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) ("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries"); *see Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983) (describing how ERISA does not mandate that "employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits").

As alleged in the FAC, TBT's modification of the Plan was done in its role as Plan sponsor, and, thus, its actions were not fiduciary in character.  This does not mean that TBT never acts as a fiduciary if it modifies the Plan, only that the FAC fails to allege that, when adopting the unfavorable Plan amendments, TBT was acting in a fiduciary capacity.  TBT has a fiduciary obligation as administrator to act "in accordance with the documents and instruments governing the plan."  29

---

[11] "The person who creates a trust is the settlor."  Restatement (Third) of Trusts § 3 (2003).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    U.S.C. § 1104(a)(1)(D).  Here, there are no facts alleging that TBT did not act in accordance with the

2    governing plan documents when the Plan amendments were adopted.

3              *3.        Whether Plaintiffs are entitled to the relief they seek*

4              Plaintiffs seek recovery for breach of fiduciary duty under the "catch all" remedial provision

5    of ERISA § 502(a)(3).  Defendants argue that because Congress provided a remedy for breach of

6    fiduciary duty under ERISA §§ 409 and 502(a)(2), Plaintiffs may not avail themselves of the more

7    general "catch all" provision of ERISA § 502(a)(3).

8              Although a plaintiff may not rely upon § 502(a)(3) if relief is provided elsewhere in the

9    statute, there is no categorical rule that precludes plan beneficiaries from bringing a claim for breach

10   of fiduciary duty under § 502(a)(3).  *See Varity Corp. v. Howe*, 516 U.S. 489, 512-15 (1996).  The

11   Supreme Court held that the "catch all" remedial provision can provide individual relief for fiduciary

12   breach.  *Id*.

13             That said, because Plaintiffs have not alleged a fiduciary act by the Defendants it is not clear

14   whether Plaintiffs are precluded from seeking relief under the "catch all" provision.

15             *4.        Conclusion regarding Plaintiffs' Second Claim*

16             Because Plaintiffs do not allege any facts that indicate that Lipman was a fiduciary or that

17   TBT was performing a fiduciary function when it modified the Plan, the FAC fails to state a claim for

18   breach of fiduciary duty.

19             Based on the foregoing analysis, the Court **GRANTS** Defendants' Motion to Dismiss

20   Plaintiffs' Second Claim **WITH LEAVE TO AMEND**.

21        C.       <u>THIRD CLAIM</u> — BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR
                                  DEALING
22

23             Defendants move to dismiss Count III for "Breach of the Implied Covenant of Good Faith and

24   Fair Dealing under State Law" as preempted.[12]

25

26

---

27   [12] Plaintiffs argue that judicial estoppel precludes Defendants from arguing that this claim is preempted.
     Plaintiffs direct the Court to a pending case, *Trustees on Behalf of Teamsters Benefit Trust v. Armagost*, 12-
28   CV-02587-MEJ, where TBT has alleged a California common law cause of action.  (Opp. at 7; Plaintiffs'
     Request for Judicial Notice (Dkt. No. 21).)

ERISA § 514(a) preempts state common law claims that directly or indirectly relate to an employee benefit plan.  *See Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000) (affirming dismissal of claims for breach of contract and breach of the covenant of good faith and fair dealing); *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (9th Cir. 1985) ("ERISA preempts common law theories of breach of contract implied in fact, promissory estoppel, estoppel by conduct, fraud and deceit and breach of contract.").  When a plaintiff brings an action under an employee benefit plan, ERISA provides the exclusive remedy.  *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987) ("the express pre-emption provisions of ERISA are deliberately expansive").  "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97-98 (1983).

Plaintiffs allege that Defendants breached the implied covenant of good faith and fair dealing by adopting the "Silver" option and by requiring Plaintiffs to pay a monthly charge.  (FAC ¶¶ 33-35.) Because this state law claim arises from modification and enforcement of an ERISA health and welfare benefits plan, Plaintiffs' claim relates directly to an employee benefit plan and is therefore preempted by ERISA § 514(a).  *See* 29 U.S.C. § 1144(a) (ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan.").

Based on the foregoing analysis, Defendants' Motion to Dismiss Count III is **Granted**. Additionally, because Plaintiffs' claim for "Breach of the Implied Covenant of Good Faith and Fair Dealing under State Law" is preempted, this state law claim is **Dismissed Without Leave to Amend**.

### D.   Fourth Claim — Breach of the Duty of Fair Representation Under Section 10(b) of the NLRA and Section 301 of the LMRA

Plaintiffs allege that Local 853 violated its duty of fair representation required under the Labor Management Relations Act when it voted on the revised RSP and when it supervised a vote among bargaining unit members but failed to include retirees such as Mr. Collins in the process.  (*Id.* ¶¶ 41-42.)  Defendants move to dismiss this claim as time-barred by the statute of limitations.

Section 10(b) of the National Labor Relations Act requires that a complaint regarding an unfair labor practice must be filed with the National Labor Relations Board ("NLRB") within six

months after the alleged unfair labor practice took place.  *See* 29 U.S.C. § 160(b) ("no complaint shall issue [from the Board] based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made"); *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 169-70 (1983).  "All breaches of a union's duty of fair representation *are* in fact unfair labor practices."  *Id.* at 170 (emphasis in original).  "[T]he six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union."  *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986).

Here, Plaintiffs allege that they knew of the alleged breach soon after May 1, 2011, when TBT commenced imposing a monthly charge for continued eligibility to participate in the RSP. (FAC ¶¶ 16, 21.)  Plaintiffs also allege that they exhausted all administrative appeals on June 27, 2011.  (*Id.* ¶ 18.)  Under NLRA section 10(b), Plaintiffs should have filed a complaint with the NLRB prior to January 1, 2012, six months after Plaintiffs should have known about the alleged breach.

Because Plaintiffs did not file any action until June 11, 2012, their claims against TBT and Local 853 alleging breaches of duties of fair representation are barred by the six-month statute of limitations.

### 1.     Tolling

In their opposition, Plaintiffs raise two alternative theories, under which they argue that statute of limitations for this claim has not run.  First, Plaintiffs suggest that the facts alleged in the FAC may permit the Plaintiff to prove that the statute was tolled, and second, they argue that the FAC "supports an inference invoking the 'continued violation' doctrine."  (Opp. at 10.)  Neither theory is supported by the facts alleged in the FAC or any analysis in Plaintiffs' opposition.

"Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action."  *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (citations omitted).  This cause of action accrued as early as May 1, 2011 but no later than June 2011, when Plaintiffs finished appealing the decision to impose monthly contributions for continued eligibility in the Plan.

Additionally, in the Ninth Circuit, the "continuing breach theory finds no support in case law" in the context of allegations brought under Section 301.  *Harper v. San Diego Transit Corp.*, 764 F.2d 663, 669 (9th Cir. 1985).  Only one violation is alleged, voting to modify the Plan, which does not support invocation of the "continued violation" doctrine.  Accordingly, even under the framework of the doctrine itself, Plaintiffs allege no facts to justify a finding that Defendants' actions "continued beyond the expiration of the limitations period."  *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1000 (6th Cir. 1994).

    2. *Conclusion regarding Plaintiffs' Fourth Claim*

Based on the foregoing analysis, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Fourth Claim WITH LEAVE TO AMEND.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED.  Plaintiffs' First and Second Claims brought under ERISA, and their Fourth Claim for breach of duty of fair representation are DISMISSED WITH LEAVE TO AMEND consistent with this Order.  Plaintiffs' state law claim is DISMISSED WITHOUT LEAVE TO AMEND.

Plaintiffs may file a second amended complaint within 45 days of the date this Order is filed.

This Order Terminates Docket Number 9.

IT IS SO ORDERED.

Date:April 5, 2013

                        
            YVONNE GONZALEZ ROGERS
          UNITED STATES DISTRICT COURT JUDGE

14